724 F.2d 357
 221 U.S.P.Q. 302, 1984 Copr.L.Dec. P 25,620
 MATTEL, INC., a Delaware Corporation, Appellant,
v.
AZRAK-HAMWAY INTERNATIONAL, INC., d/b/a Remco Toys, a New
York corporation, Ezra Hamway, Roland Paris, and
Marvin Azrak, Appellees.
 No. 518, Docket 83-7813.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 14, 1983.
Decided Dec. 23, 1983.
 
 A. Sidney Katz, Welsh & Katz, Chicago, Ill. (Eric C. Cohen, Pamela McKenna, Welsh & Katz, Chicago, Ill., Alexander R. Sussman, Robert J. Mandel, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for appellant.
 Anthony F. LoCicero, Amster, Rothstein & Engelberg, New York City (Jesse Rothstein, New York City, of counsel), for appellees.
 Before OAKES, MESKILL and PIERCE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Mattel, Inc. (Mattel), the manufacturer of a popular series of 5 1/2" action figure toy dolls sold under the registered trademark name of "Masters of the Universe," brings an expedited appeal from a decision of the United States District Court for the Southern District of New York, Richard Owen, Judge. Judge Owen refused to issue a preliminary injunction against Azrak-Hamway International, Inc. (Remco), and certain Remco officials, to stop production and sale of Remco's series of 5 1/2" action figure toy dolls titled the "Warlords," which were designed to compete with Mattel's "Masters of the Universe" dolls. Mattel claims that by producing and selling the "Warlord" dolls, Remco infringes upon Mattel's registered copyright in the "Masters of the Universe" dolls in violation of 17 U.S.C. Secs. 106, 501 (Supp. V 1981), its federal trademark rights in violation of 15 U.S.C. Secs. 1115(b), 1125(a) (1976), and its common law right under New York law to be protected against unfair competition.
 
 
 2
 The standard in the Second Circuit for injunctive relief, as set forth, e.g., in Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979), requires a showing of two things, first, irreparable harm and, second, "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Judge Owen held that Mattel did not make a showing that either prong of the second requirement was met. We agree.
 
 
 3
 The "Masters of the Universe" dolls are a series of dolls with different heads, clothing, and names, but all sharing a common torso, which is a sculptor's exaggerated rendering of a bodybuilder's body with shortened legs. Likewise, the Remco series of dolls all share a body with overdeveloped musculature and legs proportionately shorter than the average human being's. The Remco dolls all have names, heads, feet, hands, and clothing different from the Mattel dolls, with their names and costumes designed so that the dolls represent certain comic book figures. The Remco dolls' bodies also have pectoral, abdominal, and other musculature that differs in minor though significant detail from that of the Mattel dolls. Remco obtained a license from DC Comics, Inc., to model its dolls after their comic book figures "Warlord," "Arak," and "Hercules unbound." Both the Mattel and the Remco dolls are posed in a similar crouching position which may be likened to the fighting stance of a Neanderthal man or that of a latter-day professional wrestler approaching his opponent. As the district court found, any claim of uniqueness in the pose is "frivolous."
 
 The Copyright Claim
 
 4
 Mattel's claim is that Remco copied the torso of its toy, which it considers the essential part of the doll. While it is true, of course, that it is possible to infringe while copying only a part of a work, see, e.g., Elsmere Music, Inc. v. National Broadcasting Co., 482 F.Supp. 741, 744 (S.D.N.Y.) (copying of four notes and two words out of an entire song may constitute infringement), aff'd, 623 F.2d 252 (2d Cir.1980), we agree with the district court that Mattel did not demonstrate substantial likelihood of success in proving infringement of its "Masters of the Universe" torso.
 
 
 5
 Mattel owns a registered copyright in its dolls. To prove infringement, it must either produce proof of direct copying or show that Remco had access to its dolls and that the protectable features of the Remco doll's body are substantially similar to the Mattel doll's body in the eyes of the average lay observer. E.g., Warner Brothers Inc. v. American Broadcasting Co., 654 F.2d 204, 207-08 (2d Cir.1981). Remco gave its sculptor a Mattel doll to show him what kind of doll it wanted, and to insure that Remco's doll would not appear to be the physically weaker of the two toys. But the district court apparently credited the evidence of Remco's expert on human anatomy that the Remco doll was not a direct copy of the Mattel doll, but rather was simply another artist's rendering of the human form with an exaggerated musculature. The artist who sculpted the model for the Remco figure had body-building and comic magazines as well as other material from which he worked.
 
 
 6
 Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea--a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose. The rendering of such an idea is not in itself protectable; only the particularized expression of that idea, for example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected. See, e.g., Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir.1966). In this case a lay observer would recognize certain differences in the way the two sculptors have created images of strength by overemphasizing certain muscle groups. Thus, the district court reasonably found that the only parts of the dolls' bodies that constitute the protectable expression of an idea are not substantially similar. See Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 627 (2d Cir.1962) (Clark, J., dissenting).
 
 The Trademark Claims
 
 7
 To succeed on either the state unfair competition claim or the federal trademark claim, Mattel had to show that Remco copied certain nonfunctional design features of the Mattel dolls which had developed a secondary meaning in the eyes of consumers so that consumers were misled into believing that the two dolls came from the same source. E.g., American Footwear Corp. v. General Footwear Co., 609 F.2d 655 (2d Cir.1979). The court below correctly found that particular arrangement of musculature in the "Masters of the Universe" model has not developed such a secondary meaning in consumers' eyes so that they falsely associate Remco's dolls with Mattel. The dolls all have different names, clothes, and heads, and Mattel provided insufficient evidence that consumers were mistaking Remco dolls for Mattel dolls because of their similar bodies. In addition to offering direct evidence of actual confusion by customers, retailers, salesmen, or the like, what has become a usual way to demonstrate either consumer confusion or secondary meaning, in a case where the existence of secondary meaning or consumer confusion is not otherwise obvious, is for the proponent to undertake some form of survey of consumer attitudes under actual market conditions. See, e.g., Information Clearing House, Inc. v. Find Magazine, 492 F.Supp. 147, 160 (S.D.N.Y.1980).[1] Here for preliminary injunction purposes Mattel took no such survey, and it provided little other evidence demonstrating consumer confusion.[2]
 
 
 8
 Mattel also claims that Remco violated Sec. 32(1)(a) of the Trademark Act of 1946, 15 U.S.C. Sec. 1114(1)(a) (1976), by including the phrase "PLAY WITH ... MASTERS OF THE UNIVERSE ... AND OTHER 5 1/2" ACTION FIGURES" on packages selling its Warlord dolls. That section makes it a violation to use any registered trademark without permission in connection with the sale of goods. Section 33(b)(4) of that Act, 15 U.S.C. Sec. 1115(b)(4) (1976), however, allows a competitor to use another's registered trademark to describe aspects of one's own goods, even to indicate that one's product is a legitimate copy of another's product. See, e.g., Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc., 299 F.2d 33, 36 (2d Cir.1962). The district court had sufficient evidence before it to support its implicit conclusion at this stage of the proceedings that Remco's purpose in using the "Masters of the Universe" trademark in selling its dolls was to describe to purchasers a use of its own product, and did not constitute a bad faith effort to deceive consumers into thinking they were buying a Mattel toy. Moreover, the phrase in question was located on the package in a place and manner that only the close reader would notice.
 
 The Balance of Hardships
 
 9
 Mattel is, or was at the time of the district court hearing, already selling as many "Masters of the Universe" dolls as it can produce, and for inadequately explained reasons it delayed bringing this action until just before the start of the Christmas selling season. The district court therefore correctly concluded that an injunction would hurt Remco more than it would help Mattel, and that the balance of hardships does not tip decidedly in Mattel's favor.
 
 
 10
 Remco has benefited from Mattel's success in developing a market for 5 1/2"' action figure toy dolls. Mattel did not demonstrate, however, that Remco was trading on Mattel's success in any illegal way. Having failed to satisfy either prong of the preliminary injunction standard, Jackson Dairy, 596 F.2d at 72, Mattel was correctly denied the relief it requested.
 
 
 11
 Judgment affirmed.
 
 
 
 [1]
 This was not always the case, as then District Judge Feinberg pointed out in Zippo Mfg. Co. v. Rogers Imports, Inc., 216 F.Supp. 670, 682 & n. 87 (S.D.N.Y.1963)
 
 
 [2]
 The fact that Mattel spent a great deal of money advertising its product, especially when coupled with commercial success, can also be a factor in determining whether the trademark has developed a secondary meaning. 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies Sec. 77.3 at 349 (3d ed. 1969), cited in Time Mechanisms, Inc. v. Qonaar Corp., 422 F.Supp. 905, 912 (D.N.J.1976). However, proof of an expensive and successful advertising campaign in itself is of course not enough to prove secondary meaning. American Footwear Corp., 609 F.2d at 663