**IRIS ARC, Plaintiff,**

v.

**S.S. SARNA, INC. and Satnam Sarna, Defendants.**

**No. CV 85–3118.**

United States District Court, E.D. New York.

Oct. 21, 1985.

Rogers Hoge & Hills, New York City, for plaintiff; Lile H. Deinard, of counsel.

Collard, Roe & Galgano, P.C., Roslyn, N.Y., for defendants; Allison C. Collard, of counsel.

## MEMORANDUM OF DECISION

MISHLER, Senior District Judge.

Plaintiff Iris Arc ("Iris") brings this action alleging copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and unfair competition under the common law of New York by defendants S.S. Sarna, Inc. ("Sarna") and Satnam Sarna, its president. Plaintiff has moved for preliminary injunctive relief, seeking to enjoin defendants from manufacturing or marketing certain crystal sculptures which allegedly infringe on its copyrights. Plaintiff also asks that the court order the recall and impoundment of the infringing items *pendente lite.* An evidentiary hearing on the motion has been conducted in accordance with Rule 65(a)(2), Fed.R.Civ.P., pursuant to which the court makes the following findings of fact and conclusions of law:

Plaintiff Iris Arc is a corporation organized and existing under the laws of the State of California. Plaintiff manufactures

and distributes a line of lead crystal figurines. The figurines consist primarily of faceted 32% Austrian lead crystal components that are glued together to form animal and other designs.[1] The crystal components are manufactured by an Austrian company, Swarovski, and are of the type that are commonly used in the production of chandeliers. In addition to the crystals, the sculptures also contain blown glass components which are used to form certain of the animals' body parts.

Defendant Sarna, Inc. is a corporation organized and existing under the laws of the State of New York; Satnam Sarna is its president. Sarna produces and sells its own extensive line of crystal figurines which are also composed primarily of the Swarovski crystals with certain blown glass components.

Plaintiff has marketed a line of crystal figurines since 1979, defendant since 1983. Plaintiff has obtained copyright registration certificates on ten of the eleven items (including designs of a swan, peacock, birdbath, unicorn, and mother bird feeding babies) which it claims are being infringed upon.[2] The eleventh piece, which plaintiff entitles "Rudolph the Red Nosed Reindeer" ("Rudolph"), has been produced under a license from the Robert L. May Co., which allegedly owns all copyright and trademark rights in the Rudolph character.[3] The license agreement, which has been filed with the Copyright Office, permits plaintiff to exploit the Rudolph character in the crystal medium.[4]

Iris markets its products nationwide. The figurines are advertised in an annual catalogue and in trade magazines, are exhibited at frequent trade shows, and are on permanent display in showrooms in sixteen cities. Plaintiff's pieces all bear the official notice of copyright as required by 17 U.S.C. § 401.

Defendant Sarna has been in the giftware business since 1920 and entered the crystal figurine market with a line of products in 1983. Among its line are the designs of a peacock, swan, unicorn, birdbath, mother bird feeding babies, and reindeer that are the subjects of this action.[5] De-

---

1. Lead crystal is glass which contains a certain percentage of lead. The addition of lead gives the glass qualities it does not otherwise have. It makes the glass softer and less brittle, which facilitates the lapidary work, such as faceting and grinding, which is a common characteristic of many items made from this substance. Also, the lead content increases the index of refraction of the glass, enabling the faceted crystal to sparkle with the type of prismatic reflections thrown off by gemstones.

2. Copies of these registrations, as well as the works themselves, have been submitted to the court. The works are identified as follows: Crystal Kingdom ("CK") Peacock, Registration Number VA 184–558, Exhibit 3; CK Small Peacock, No. VA 184–562, Exhibit 10; CK Large Peacock, No. VA 191–865, Exhibit 26; CK Medium AB Peacock, No. VA 191–864, Exhibit 19; CK Small AB Peacock, No. VA 191–867, Exhibit 21; CK Large Unicorn, No. VA 184–583, Exhibit 9; CK Small Unicorn No. VA 191–867, Exhibit 7; CK Birdbath, No. VA 184–569, Exhibit 1; CK Feeding Time, No. VA 191–866, Exhibit 15; CK Medium Swan, No. VA 191–868, Exhibit 27.

3. A copy of the registration has been submitted, Exhibit 5A. It bears the registration number VA 164–986 and names the Robert L. May Co. as the copyright owner by virtue of a contractual transfer from the author, Iris Arc.

4. We note that for purposes of this motion we need not decide whether the Robert L. May Co. actually owns a copyrightable interest in the Rudolph character. The work that is allegedly being infringed is the crystal figurine itself, which is clearly copyrightable, and has been introduced into evidence as Exhibit 5.

5. Specifically, the items complained of are identified as: Bird Bath, Stock No. CR22, Exhibit 2; Mother Bird Feeding, No. CR38, Exhibit 16; Peacock (110 mm), No. CR403, Exhibit 4A; Peacock (110 mm), No. CR403AB, Exhibit 20; Crystal Peacock AB (45 mm), No. CR15, Exhibit 22; Unicorn (45 mm), No. CR153, Exhibit 17 (pictured in catalogue); Unicorn (85 mm), No. CR5, Exhibit 43; Bird Bath, No. CR22, Exhibit 2; Reindeer, No. CR27, Exhibit 6; Swan, No. (unknown); Large Peacock, No. (unknown). Since the contested Swan and Large Peacock have not been introduced into evidence, the determination of whether they are infringing is rendered unfeasible. However, Mr. Sarna has offered uncontradicted testimony that these pieces are no longer being produced or sold. We note that neither item is pictured in the current Sarna catalogue (Exhibit 17). A preliminary injunction with respect to these items appears to be unnecessary except for plaintiff's request for recall of the infringing pieces *pendente lite.*

fendant promotes its line through an annual catalogue and participates in the same trade shows as the plaintiff.

It was at a trade show in January or February of this year that Jonathan Wygant, president of Iris, became aware that Sarna was selling some items that he felt were in conflict with his company's copyrights. At another show in May, Wygant observed the rest of the infringing items on display in defendants' booth. Shortly thereafter plaintiff's counsel sent defendants a letter demanding that they cease and desist from their infringing activity. There followed a period of correspondence and negotiations between the parties. In response to plaintiff's protest, defendant made modifications in several of its designs and submitted them for plaintiff's approval. Ultimately the negotiations proved unsuccessful and plaintiff brought the instant action.

In order to obtain a preliminary injunction in this Circuit, the moving party must establish "possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Consumers Union of U.S. Inc. v. General Signal Corp.*, 724 F.2d 1044, 1048 (2d Cir. 1983), *quoting Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Moreover, in copyright cases, if a prima facie case of infringement can be shown, "the allegations of irreparable injury need not be very detailed because such injury can normally be presumed when a copyright is infringed." *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *see Rushton v. Vitale*, 218 F.2d 434 (2d Cir. 1955) (upon making out a prima facie case for copyright infringement plaintiff is entitled to a preliminary injunction); *see also* M. Nimmer, *Nimmer on Copyright* ("Nimmer") § 14.06[A] at 14—51, 52, 53 (1985).

In order to prevail on the merits in a copyright infringement action the plaintiff must establish (1) its ownership of a valid copyright and (2) copying by the defendant. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977); *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982). Timely registration with the Copyright Office "constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Once registration is established it is defendant's burden to overcome the presumption of validity. *Dollcraft Industries, Ltd. v. Well Made Toy Mfg. Co.*, 479 F.Supp. 1105, 1114 (E.D.N.Y.1978).

In the instant case, plaintiff's copyrights have been registered with the Copyright Office within five years of first publication of the respective works. Defendants attempt to rebut the prima facie validity of plaintiff's copyrights on two grounds. First, defendants argue that plaintiff is not the owner of several of the copyrights in issue and therefore lacks standing to bring an infringement action with respect to these works. It is defendants' contention that because the works were created by Peter Hale, who at the time was an independent contractor doing design work for plaintiff, they do not fit within the statutory definition of "work made for hire" as provided in 17 U.S.C. § 101.

The Copyright Act provides that "in the case of a work made for hire the employer or other person for whom the work was prepared is considered the author." 17 U.S.C. § 201(b). In *Aldon Accessories, Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2nd Cir.1984), the Second Circuit, faced with an argument analogous to defendants', had occasion to construe the scope of the "work for hire" doctrine under the 1976 Copyright Act. The court concluded that subdivision (1) of the definition of "work made for hire" in section 101 of the 1976 Act did not effect a change from the 1909 Act and the decisions construing it. Thus a contractor who works under the supervision and direction of the hiring party is considered to be an "employee" acting "within the scope

of employment." *Id.* at 552; *see also Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213, 1216–17 (2d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972) (the fact that one acts in the capacity of an independent contractor does not preclude a finding that a work was done for hire).

■ The testimony given at the hearing revealed that designer Peter Hale worked closely with Jonathan Wygant, president of Iris, and with other Iris employees through all the stages of the creative process, from the initial conception of the work to the final prototype. Hale maintained an office on plaintiff's premises, as the great bulk of his design work was done for plaintiff. Wygant and other Iris employees provided substantial input into the work; their modifications and suggestions were incorporated into the final designs. Ultimately a design had to meet with plaintiff's approval before it could go into production. It is thus clearly established that the pieces were created for plaintiff as works made for hire within the meaning of section 101 of the Copyright Act.

Defendants also contest the validity of several of plaintiff's copyrights based on alleged misstatements in its applications for registration with the Copyright Office. Specifically, defendants claim that in several of its applications plaintiff did not indicate in the box provided that the works for which he sought registration were "derivative works."[6] Defendants argue that omission of this information prevented the Copyright Office from determining whether the variation in the derivative work was sufficiently original to be protectable under the copyright laws.

If an author's contributions to a pre-existing work are "merely trivial" he will not be entitled to copyright protection. *See e.g. Russ Berrie & Co., Inc. v. Jerry Els-*

ner Co., Inc., 482 F.Supp. 980, 988 (S.D.N. Y.1980). Of course this principle only makes sense where the pre-existing work is in the public domain; its clear rationale is that one should not be able to appropriate for oneself work in the public domain by the simple expedient of filing a copyright application. The glaring flaw in defendants' argument is that the pre-existing works on which plaintiff's contested applications are based are plaintiff's own copyrighted creations. One of the exclusive rights of a copyright owner is the right to prepare "derivative works." 17 U.S.C. § 106(2), thus if plaintiff's works based on its pre-existing works are considered "derivative works," plaintiff has the exclusive right to them.

■ Plaintiff has introduced copies of four separate registration certificates for peacock figurines, one each for the large, medium, and small models and a fourth for the medium peacock done in "aurora borealis" crystal.[7] The first of these works to be published was the medium peacock published in 1983. If plaintiff's subsequent peacocks are considered derivative works then only plaintiff would have the right to produce them. The fact that plaintiff did not indicate that the later peacocks were derivative works is not sufficient to invalidate its copyrights. A misstatement on the registration application, if innocently made, and which could not have affected the action of the Copyright Office, will not invalidate the copyright nor deprive the registrant of the right to bring an infringement action. *See Thomas Wilson & Co. v. Irving J. Dorfman Co.,* 433 F.2d 409 (2d Cir.1970); *see also* Nimmer, *supra,* § 7.20. We note that the term "derivative work" is a technical term of copyright law. Plaintiff's president and designer have testified that an enlargement or reduction of an existing design involves more than a mere

---

**6.** A "derivative work" is defined in section 101 of the Copyright Act as "a work based upon one or more pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, conden-

sation, or any other form in which a work may be recast, transformed, or adopted."

**7.** Aurora borealis crystal is lead crystal that has been coated by a chemical process which causes it to give off multicolored reflections.

proportional adjustment of all the components, but that significant modifications may have to be made, both to retain the aesthetic appearance and to insure sound construction.

Although plaintiff's filings for variations of its original designs may have erred on the side of caution there was no intention to mislead nor was there the possibility of resulting harm. The copyright law may be technical, but it is not so fragile that plaintiff's possible errors in its applications will destroy its copyright protection in these works. *See Pantone, Inc. v. A.L. Friedman, Inc.*, 294 F.Supp. 545 (S.D.N.Y.1968) (inadvertent filing of a second registration application for what was essentially the same work did not render the copyright invalid); *see also* Nimmer, § 7.20 at 7—146, 147.

The second element in an infringement action is copying by the defendant. Since direct proof of copying is generally inaccessible it can be proved circumstantially by proof that defendant had access to plaintiff's copyrighted works and that defendants' and plaintiff's works are substantially similar. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*, 558 F.2d at 1092; *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir.1946).

In the instant case there is no dispute as to access. Mr. Sarna has admitted that he purchased, by means of mail order to his home, most of the Iris figurines at issue in this lawsuit. The invoices for sales to defendant, ordered under the pseudonym "Best Wishes," of plaintiff's birdbath, medium peacock, small peacock, reindeer, small unicorn, and feeding time have been introduced into evidence. (Exhibits 44A–G). With respect to the other allegedly copied pieces, we find that defendants had access to these items. Access is defined as a reasonable opportunity to copy plaintiff's work. *Arrow Novelty Co. v. Enco National Corp.*, 393 F.Supp. 157, 160 (S.D.N.Y. 1974), *aff'd*, 515 F.2d 504 (1975). The evidence presented at the hearing shows that plaintiff's works have been widely disseminated and are readily available in the market. Plaintiff and defendants both participate in the same trade shows, and until recently maintained offices in the same building in New York City. An inference of access, therefore, is amply supported.

The next question to be resolved is whether defendants' works are substantially similar to plaintiff's. The classic formulation of the test for substantial similarity, as put forth by Judge Learned Hand in *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir.1960), is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* at 489. A more recent formulation of the test is that substantial similarity is present where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). The works need not be alike in every detail so long as the overall impression given is one of substantial similarity. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir.1980).

An important limitation on the substantial similarity analysis stems from the fundamental principle in copyright law that protection of a copyrightable work extends only to the particular expression of an idea but not to the idea itself. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976), *citing Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). Separating the unprotected idea from the protected expression is often not an easy task. As Judge Hand recognized, "no principle can be stated as to when an imitator has gone beyond copying the 'idea' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra*, 274 F.2d at 489.

With respect to the instant case, surely the idea of animal figurines composed primarily of faceted lead crystal cannot be copyrighted. Exhibits introduced at the

hearing indicate that there is lively competition in the production and marketing of this type of item. Likewise the idea of a sculpture of a particular animal, be it a swan, peacock, or unicorn, cannot be monopolized by anyone under the copyright law. *See Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974) (a jeweled bee pin is an unprotectable idea). But, in carrying out the execution of a particular idea, the creator may invest it with his own original expression. It is this expression which can be protected. *See Mattel, Inc. v. Azrak-Hamway International, Inc.*, 724 F.2d 357 (2d Cir.1983) (a rendering of a superhuman muscleman crouching in a traditional fighting pose is not protectable, but the particular form created by the decision to accentuate certain muscle groups relative to others can be protected). The guiding consideration in drawing the line between idea and expression is maintaining the balance between the societal benefits that flow from vigorous competition and the rewarding of an individual's ingenuity and creative effort. *Durham Industries, Inc. v. Tomy Corp., supra,* 630 F.2d at 912.

We pass now to an examination of the contested works. Plaintiff's and defendants' peacocks appear to be virtually identical.[8] The only apparent difference is that the heads of defendants' birds are facing forward while plaintiff's face to the left. Mr. Sarna has testified (transcript at 2.116), and very close observation reveals, that the heads of the Sarna birds are larger and their necks are thicker. These variations are minor and insignificant and do nothing to alter the impression of overwhelming similarity between defendants' and plaintiff's peacocks.

As to the bird baths, a casual observation does not disclose any readily discernable differences between them. Upon further inspection one notices that the bathing birds are positioned slightly differently in each piece. Mr. Sarna has testified that the component prisms used in his birds are different than plaintiff's (transcript at 2.125). A more studious observation reveals that this is in fact the case, and that a different crystal is also used for the base, however, these variations are too insignificant to detract from the striking similarity between these works.

As to the parties' representations of a mother bird feeding its babies, an average lay observer would clearly recognize that the design of defendants' piece has been appropriated from plaintiff's. The only readily observable difference is the crystal upon which the mother bird is perched. Plaintiff's piece employs an oval crystal, while defendants' uses a narrow "teardrop" crystal on top of which is glued a blown glass component. Defendants' mother bird is thus perched higher up in relation to the two feeding babies. Notwithstanding this one readily observable difference, the overall aesthetic effect of the works is very much the same. The composition, size, posture and position of the mother bird and the two babies are virtually identical. The crystal used for the base or nest appears to be the same, as does the egg. Mr. Sarna has testified, and a more exacting study confirms, that different crystals have been used to construct the mother bird, however, these differences are minimal and do not affect the overall aesthetic appearance to the average lay observer.

Sarna's reindeer, while not alike in every detail, is nevertheless substantially similar to plaintiff's. The pieces are the same size; both reindeer appear to be composed of the same crystal components; their posture is

---

8. Plaintiff has submitted five different peacocks which it alleges are infringed. The peacocks are in three different sizes and configurations. Both the small and medium size birds have counterparts that are identical except for the fact that they are composed of aurora borealis rather than clear crystal. The mere variation in the color of the crystals is not significant enough to entitle these works to separate copyright protection. Of the three different models, only two models of the infringing pieces have been introduced into evidence. No large Sarna peacock has been introduced, thus the court cannot determine whether substantial similarity exists with respect to this item.

very similar; the heads, eyes, ears, noses, and antlers are virtually identical, and both have collars of what appear to be rhinestones. The fact that the head of the Sarna piece is turned to one side while plaintiff's faces straight ahead does not counteract the overall similarity of expression. Nor does the fact that both pieces are mounted on different bases and that their forelegs are positioned somewhat differently.

Defendants' small unicorn has not been introduced into evidence, however, there is a clear photograph of the item in the current Sarna catalogue. Again, the two pieces are strikingly similar in appearance. The only observable difference is that plaintiff's unicorn has a square crystal base while defendants' is mounted on a circular mirror. This is not sufficient to negate a finding of substantial similarity.

 Whether defendants' large unicorn is substantially similar to plaintiff's presents a more difficult question than do the other pieces. Although both are about the same size and are in similar rearing postures, the numerous readily observable differences in detail combine to give defendants' unicorn a different "expression." Upon looking at the two pieces, it is immediately apparent that the Sarna unicorn has a much longer horn than plaintiff's, that it lacks both a beard and a mane, that its tail is in a completely different configuration, and that its forelegs are symmetrically raised whereas plaintiff's forelegs are rearing in a way that gives a greater feeling of animation and motion. The Sarna unicorn is placed on a circular mirror base while plaintiff's is on a square crystal, but unlike the case with the small unicorns, this is one of many differences which combine to give a different overall effect. In comparison with the animated feeling projected by the Iris unicorn, defendants' gives an impression of equilibrium and repose. Although close to the borderline, we find that with respect to the large unicorns there is no substantial similarity.

Plaintiff having thus established (by proof of access and substantial similarity) a prima facie case of infringement, the defendant must come forward with some rebuttal. This may be done, for example, by defendant presenting credible evidence of its independent creation of the infringing work, or of its copying from material in the public domain. *See Russ Berrie & Co. v. Jerry Elsner Co., supra,* 482 F.Supp. at 985; *Arrow Novelty Co. v. Enco National Corp., supra,* 393 F.Supp. at 160.

Defendants have presented evidence, in the form of testimony by Mr. Sarna, relating to the creative process by which its figurines were designed. Rather than rebutting the inference of copying, Mr. Sarna's testimony gives it further support. Indeed, it is apparent that defendants are in the business of "knocking off" the products of Iris and perhaps other competitors, using their designs as a starting point but making such changes as defendants think would be necessary to avoid infringement. After admitting, on direct examination, that he purchased the Iris pieces before designing his own, Mr. Sarna testified, "I make sure that I don't make exactly the same thing," (transcript at 2.116) and, "I make sure I change it ... I don't want to copy the same." (transcript at 2.177).[9]

Defendants have also pressed the argument that, given the concededly unprotectable "idea" of an animal figurine composed of faceted lead crystal, any similarities between their works and plaintiff's are a necessary result of the limitations of the medium. Since both parties' works are made primarily from identical stock components (the Swarovski crystals), are of relatively simple design, and seek to give, as well as

---

**9.** It has been held that "even if an alleged copy is based on a copyrighted work 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.'" *Eden Toys, Inc. v. Marshall Field & Co.,* 675 F.2d 498, 501 (2d Cir.1982), *quoting* Nimmer § 13.03[13] at 13–37 (rev. ed. 1980). In those instances where we have found that defendants' copies are substantially similar, it necessarily follows that the changes were not sufficient to avoid infringement.

possible, a naturalistic impression of the particular animals rendered, defendants argue that the close similarities in appearance are unavoidable. Defendants offer support for their argument with a citation to *Freedman v. Grolier Enterprises, Inc.,* 179 U.S.P.Q. 476 (S.D.N.Y.1973) which holds that "when an idea is so restrictive that it necessarily requires a particular form of expression, that is, when the idea and its expression are functionally inseparable, to permit the copyrighting of the expression would be to grant the copyright owner a monopoly of the idea. Copyright protection will not be given to a form of expression necessarily dictated by the underlying subject matter." *Id.* at 478; *see also* Nimmer § 13.03[A] at 13–32 ("similarity of expression ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity").

While defendants' argument has a certain plausibility, the evidence adduced at the hearing convinces us that the idea of rendering a particular animal in the medium of faceted lead crystal is not so restricted that the idea and its expression are "functionally inseparable"; the variations available to one who wishes to express such an idea are not so limited as to make unavoidable the creation of substantially similar works. Evidence has been introduced in the form of catalogues and actual figurines produced by competing giftware firms which portray their renditions, done in the same crystal medium, of the same animal subjects as the infringing items in this action. It is our observation that these companies have managed to express the same ideas as plaintiff without producing pieces that are substantially similar.[10] There is no reason why Sarna should not be able to do the same, indeed, we have

found that with respect to its large unicorn it has done so.

Having demonstrated the likelihood of success on the merits, it remains to be determined whether plaintiff is entitled to a preliminary injunction. As has been noted above, in copyright cases there is a presumption of irreparable harm once a prima facie case of infringement has been established. *See Wainwright Securities, Inc. v. Wall Street Transcript Corp., supra,* 558 F.2d at 94; *Robert Stigwood Group Ltd. v. Sperber,* 457 F.2d 50, 55 (2d Cir.1972). A "detailed showing of the danger of irreparable harm" is not required. *Rushton v. Vitale, supra,* 218 F.2d at 436; *see also* Nimmer § 14.06[A] n. 6.

Here the presumption of irreparable harm has been bolstered by evidence presented at the hearing. It is clear that Iris and Sarna are in direct competition in the same market. Uncontradicted testimony has been offered that the Sarna pieces wholesale for substantially less than plaintiff's. Mr. Wygant testified that Iris has recently experienced an unusual decline in sales of the infringed items, and that it has lost several accounts entirely since the infringement began. A memo from an Iris sales manager to Mr. Wygant indicates that one account, Caravansery in New York, has dropped plaintiff's line in order to stock Sarna's cheaper imitations. Mr. Wygant has also testified that the months before Christmas are plaintiff's most important selling period. As it is now already October, the need for immediate relief is clearly urgent.

The only rebuttal offered by defendants to plaintiff's showing of irreparable harm is the allegation that plaintiff waited some 4½ months after becoming aware of the infringement before taking some kind of

---

**10.** For example, the idea of a crystal peacock was expressed by Crystal Critters (Exhibit C, catalogue number A–150), The Crystal World (Exhibit 13, catalogue numbers 471, 472 and 479), Royal Crystal Collectibles (Exhibit 14, catalogue number 272), and Crystal Zoo (Exhibits 11 and 12 are actual figurines of a competitor). None of these various peacocks appear to be substantially similar to plaintiff's, or for that matter, to each other.

The theme of a birdbath is expressed in works by The Sundance Crystal Collection (Exhibit G, catalogue numbers A–124 and A–146) and J and J Design (Exhibit B, catalogue numbers 2–293 and 2–302), none of which would appear to infringe on plaintiff's copyrightable expression.

action. From this defendants would have us infer the lack of danger of irreparable harm. While it is true that lack of diligence in seeking relief may be sufficient to rebut a presumption of irreparable harm, *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985), thus precluding the granting of preliminary injunctive relief, *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7 (2d Cir.1985), the instant plaintiff's conduct is not so lax as to indicate a reduced need for immediate action. In *Citibank*, a trademark infringement case, the plaintiff was aware of activities by defendant that were in violation of its trademark rights for several years before taking any legal action, 756 F.2d at 277. It had notice of the particular infringing activity complained of for more than nine months before taking action. *Id.* at 276. Likewise, in *Majorica*, also a trademark case, the plaintiff was aware of the conduct complained of for several years prior to its motion for a preliminary injunction; the motion itself was made more than six months after the action was commenced. 762 F.2d at 8.

In the instant case plaintiff first became aware of the infringing activities at a trade show in January or February of this year. At that time Mr. Wygant observed a few of the Sarna imitations, however, it was not until another trade show in May that he became aware of the full extent of the infringement, viewing the whole array of infringing items. Also, in January plaintiff had not yet become aware of the decline in sales or the lost accounts. Shortly after the May show, Iris took action by having its attorney send defendant a cease and desist letter. Any further delay in taking legal action is attributable to the fact that over the next several months the parties attempted to work out their differences through negotiation. When it became apparent to plaintiff that its grievances were not being resolved to its satisfaction it commenced this action, moving immediately for a preliminary injunction. Thus we cannot conclude that plaintiff's conduct is so lacking in diligence as to warrant an inference that there is no danger of irreparable harm. Additionally, we note that in *Citibank* there was no additional evidence to support the presumption of irreparable harm flowing from the infringement, 756 F.2d at 275, whereas here ample evidence of irreparable harm has been supplied. We conclude therefore that plaintiff is entitled to a preliminary injunction with respect to the infringing items.

Plaintiff also brings a claim of unfair competition under the common law of New York State. Since we have decided to grant plaintiff's motion based on its copyright claims, there is little need to consider its unfair competition claim at this point, however, since we have denied plaintiff's request for injunctive relief as to one of the alleged infringing items (the large unicorn), some discussion of the unfair competition claim is in order.

To the extent that plaintiff asserts rights equivalent to those protected by its copyrights, the claim is preempted by section 301(a) of the Copyright Act of 1976. Thus, any claims based on the fact that defendants' products are substantially similar copies of plaintiff's are preempted. *See Durham Industries, Inc. v. Tomy Corp., supra*, 630 F.2d at 918–19. With respect to non equivalent rights, plaintiff has alleged that defendants' marketing practices are likely to cause consumers to confuse defendants' products with its own. We find that plaintiff has failed to present evidence sufficient to support a motion for a preliminary injunction on these grounds.

Both parties package their figurines in boxes that are completely different in appearance. Their catalogues clearly identify the manufacturer with visually distinct trademarks and logos. Undisputed evidence has been offered that defendant now affixes individual labels to each figurine, thus eliminating possible consumer confusion when the items are displayed without the packaging. Mr. Wygant has testified that while at a gift shop belonging to a customer of Iris, he observed several Sarna pieces on display in an Iris showcase. Although this may indeed be deceptive, there

is no indication that defendants had anything to do with it. It could just as well have been a giftshop employee who was responsible for the display. Plaintiff's motion for a preliminary injunction based upon its common law unfair competition claim is therefore denied.

For all of the reasons set forth above, plaintiff's motion for a preliminary injunction based on its copyright claims is granted, the terms of which are contained in an order accompanying this decision.