**WORLDS OF WONDER,
INC., Plaintiff,**

v.

**VECTOR INTERCONTINENTAL, INC. and New Age Communication Center, Inc. d/b/a Suma Recording Studio, Defendants.**

**No. C86–2671.**

United States District Court,
N.D. Ohio, E.D.

Aug. 26, 1986.

Casey Yim, Lewis D'Amato, Brisbois & Biogaard, Los Angeles, Cal., for plaintiff.

John Parks, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants.

Timothy R. Sweeney, Zellmer & Gruber, Cleveland, Ohio, for New Age Communication Center, Inc.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On June 24, 1986, plaintiff, Worlds of Wonder, Inc. ("W.O.W."), filed the above-captioned case against defendants, Vector Intercontinental, Inc. ("Vector") and New Age Communication Center, Inc. d/b/a Suma Recording Studio ("Suma"), alleging violations of the Copyright Laws, 17 U.S.C. § 101 *et seq.;* the Lanham Trademark Act, 15 U.S.C. § 1115 *et seq.* and state laws against unfair business practices. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1332 [1], 1338 [2].

---

1. Section 1332 of title 28 provides, in pertinent part:

 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

 (1) citizens of different States....

2. Section 1338 of title 28 provides, in pertinent part:

Before the Court is a motion of W.O.W. for a preliminary injunction. On July 16, 1986, a hearing was held and for the following reasons the motion is GRANTED.

## I.

W.O.W. is a California corporation that manufactures, markets and distributes Teddy Ruxpin, an animated toy bear, under an exclusive licensing agreement with Alchemy II, a design and development company which created Teddy Ruxpin. (Larsen, Tr. 62). Teddy Ruxpin is animated by electromechanical motors near its eyes, nose and mouth, a modified cassette player, and programmed cassette tapes. The cassette tapes contain two tracks similar to stereo tapes. The first track, the audio track, contains songs and stories; the second track, the command track, contains digital information that activates the eyes, nose and mouth. (Larsen, 67). W.O.W.'s tapes are not intended for use in a stereo. The cassette player transmits the recordings from the audio track to a speaker in Teddy Ruxpin and those from the command track to the motors. The player contains a "kill switch" that blocks the transmission of signals to the motors if a standard stereo tape is inserted.

The audio track and the command track are synchronized so that the eyes, nose and mouth of Teddy Ruxpin move in a life-like fashion as it plays songs and stories. W.O.W. and Alchemy II cooperated to develop a fantasy, the World of Teddy Ruxpin, by creating adventure stories with Teddy Ruxpin as the central of about twelve characters. The stories teach children values such as love, honesty, loyalty and friendship. (Goldberg, Tr.). Among other characters are Grubby, Teddy's best friend, and Fobs. Grubby, a plush toy, is animated by a cord plugged into Teddy Ruxpin. (Goldberg, Tr. 10). Fobs are hand puppets children use to interact with characters in the stories. (Goldberg, Tr. 11). In the adventures, Teddy and his friends travel in an "airship" through the land of Grundo. (Goldberg, Tr. 12). As part of the World of Teddy Ruxpin, W.O.W. has designed a map of Grundo, "poseable miniatures", a model "airship" and Teddy Ruxpin clothing. (Goldberg, Tr. 12).

Teddy Ruxpin is a commercial success. Since Fall 1985, more than one and a half million Teddy Ruxpins have been sold. For the fiscal year ending March 31, 1986, W.O.W.'s net sales were Ninety-Three Million Dollars ($93,000,000.00), and the Toy Manufacturers Association ranked Teddy Ruxpin among the ten best selling toys. (Goldberg Tr. 19, 21).

Vector, a toy company, has manufactured cassette tapes which are intended to and do activate Teddy Ruxpin. (Singer, Tr. 165, 166, 218, 220). Like the W.O.W. tapes, the Vector tapes contain an audio track and a command track, but the stories on the Vector tapes are not set in the World of Teddy Ruxpin but rather are public domain fairy tales. Vector hired Suma to produce these tapes with audio and command tracks synchronized for use with Teddy Ruxpin and intends to distribute and sell them with notice that they will activate Teddy Ruxpin. (Bishop, Tr. 135, 136, Ex. C). When Vector conceived the idea to produce Teddy Ruxpin compatible tapes, Carey Singer, its president, knew of the toy's commercial success and admitted that he intended to capitalize on that success.

## II.

■ In a copyright infringement case the Court may issue a preliminary injunction if:

1) there is a substantial likelihood that the plaintiff will prevail on the merits of his claim,

2) the balance of hardships tips in favor of the plaintiff and,

3) it is in the public interest.

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct.

(a) The district courts shall have original jurisdiction of any civil action arising under any

Act of Congress relating to ... copyrights....

690, 79 L.Ed.2d 158 (1984); *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982).

## SUBSTANTIAL LIKELIHOOD OF SUCCESS

Copyright infringement is defined under Section 501 of Title 17 as follows:

> (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright.

Section 106 of Title 17 provides in pertinent part:

> [T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work; ...

Section 101 of Title 17 defines a "derivative work" as:

> [A] work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

 To establish infringement of copyright W.O.W. must show: 1) ownership of a valid copyright; 2) copying by the defendants. *Eckes v. Card Prices Update,* 736 F.2d 859 (2nd Cir.1984); *Atari, Inc. v. North American Philips Consumer Elec-*

*tronics Corp.,* 672 F.2d at 614. First a certificate of copyright registration is a prima facie showing of a valid copyright. *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905 (2nd Cir.1980); *Nintendo Of America, Inc. v. Elcon Industries, Inc.,* 564 F.Supp. 937 (E.D.Mich.1982). W.O.W. introduced Certificates of Copyright Registration, Numbers VA171–809 and PA288–501, for Teddy Ruxpin as a plush toy bear and as an audio-visual work. (Ex. 6 & 7). Section 101 of Title 17 provides in pertinent part that:

> "Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices ... together with accompanying sounds....

Therefore, there is a substantial likelihood that W.O.W. will establish ownership of a valid copyright.[3]

Second, to prove copying W.O.W. must demonstrate access to Teddy Ruxpin by Vector and Suma and substantial similarity between the work of W.O.W. and that of Vector and Suma. *Mattel, Inc. v. Azrak-Hamway International, Inc.,* 724 F.2d 357, 360 (2nd Cir.1983); *Atari,* 672 F.2d at 614. Both Vector and Suma had access to a Teddy Ruxpin bear before and during the production of their tapes. Michael Bishop produced the tapes for Vector and testified that he used a Teddy Ruxpin as a visual aide in encoding the Vector tapes. (Bishop, Tr. 137, 146). Kenneth Hamann, President of Suma, testified that he analyzed a Teddy Ruxpin tape to determine how it could be duplicated. (Hamann, Tr. 240).

 As to the issue of substantial similarity, a copyright extends only to the particular expression of an idea and not to the idea itself. 17 U.S.C. § 102(b);[4] *Sid &*

---

**3.** Neither Vector nor Suma have challenged the validity of the copyright nor W.O.W.'s right to sue. W.O.W. is a licensee under the copyright and thus has the ownership of and the right to sue under it. Section 501 of Title 17 provides in pertinent part:

> (b) The legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of

that particular right committed while he or she is the owner of it....

**4.** Section 102(b) of Title 17 provides, in pertinent part:

> In no case does copyright protection for an original work of authorship extend to any idea ... regardless of the form in which it is ... embodied in such work.

*Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir.1977); *Atari*, 672 F.2d at 615; *Mattel*, 724 F.2d at 360. Thus if the only similarity between W.O.W.'s work and the work produced by the Vector tapes were that of the idea of an animated toy bear, there would not be substantial similarity. *Warner Brothers Inc. v. American Broadcasting Co.*, 654 F.2d 204 (2d Cir.1981). If any use of an idea necessarily involved certain forms of expression, the copyright would protect against only identical copying. *Atari*, 672 F.2d at 615; *Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222 (D.Md.1981). An example of the idea-expression dichotomy is found in *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971). In that case the plaintiff charged the defendants with copyright infringement of the expression in a pin of the idea of a jewel encrusted bee. The Court held there was not substantial similarity. The Court determined that the idea and its expression were indistinguishable and that there was no greater similarity between the pins than was inevitable from the expression of that idea. In applying the idea-expression dichotomy and the jeweled bee pin example to the instant matter the Court finds the reasoning in *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, to be persuasive. The Court in *Atari*, held that, "as a work embodies more in the way of particularized expression, it moves farther away from the bee pin in *Kalpakian*, and receives broader copyright protection." *Atari*, 672 F.2d at 617. Teddy Ruxpin, unlike the bee pin, is a complex, artistic expression. Teddy Ruxpin's creator testified that many years were spent in developing the bear. (Larsen, Tr. 62). He also described the detailed mechanics involved in animating Teddy Ruxpin and the intricacy of programming the command track to achieve life-like movement. (Larsen, Tr. 65, 78).

The idea of an animated toy bear and its expression are not indistinguishable. There are a variety of ways to express the idea. The color, size, proportions, shape and clothing may vary. As to a speaking bear, the pitch, gender and speed of the voice may vary. As to an animated bear, the movements of eyes, nose, mouth and paws may vary.

Vector did not design a toy bear for use with its tapes. The tapes must be played in Teddy Ruxpin bear to use the command track. Although evasive at first, Singer admitted that he wanted a tape to animate Teddy Ruxpin and so informed Suma (Singer, Tr. 218). At the hearing, Singer and Bishop were unable to identify an animated toy, other than Teddy Ruxpin, which a Vector tape could activate. (Singer Tr. 228, Bishop Tr. 134–135).

The test to determine whether two expressions of an idea are substantially similar is the "ordinary observer test," that is:

whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. *Atari*, 672 F.2d at 614.

The ordinary observer test has also been defined as whether, "the ordinary observer, unless he set out to detect disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

█ Applying the ordinary observer test, there is a substantial likelihood that W.O.W. will establish substantial similarity between the two works. During the hearing, the Court compared the work created when a W.O.W. cassette activated Teddy Ruxpin and the work created when a Vector tape activated Teddy Ruxpin. Such comparison revealed not only a general similarity as to the "concept and feel" of the two works but also specific similarities. *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir.1970).

First, the voice of the narrator on the Vector tape is almost identical to the Teddy Ruxpin voice, is male and has a similar tone, pitch and pace such that the casual listener would probably overlook any dif-

ference. Vector intended this effect; Bishop testified that he selected a higher pitch male voice for the Vector tapes to identify it with that of Teddy Ruxpin (Bishop Tr. 143, 144). Second, chose a method and sound for signaling the end of a page similar to that of W.O.W. Third, when a Vector tape is played in Teddy Ruxpin, the visual impression of the eyes, nose and mouth movement is virtually identical. Bishop used a Teddy Ruxpin bear when he encoded the Vector tapes. (Bishop Tr. 146).

Vector and Suma attempt to refute the similarities between the two works by scrutinizing their differences. However, "the key to the ordinary observer test is the overall similarities rather than the minute differences between the two works." *Atari*, 672 F.2d at 618. Vector and Suma argue that when a Teddy Ruxpin is activated by one of their tapes, it tells a different story, moves in a different pattern, and therefore does not infringe. This argument is without merit because the general feel and concept of Teddy Ruxpin when telling a fairy tale is the same regardless of whether a W.O.W. or Vector tape is used; the visual affects are identical, and the voices are similar, and the difference in stories does not alter the aesthetic appeal. It is possible to infringe without exactly copying a work. *Mattel*, 724 F.2d at 360. At least, the work created by the Vector tapes is a derivative work, if not an exact copy.

Vector and Suma further argue that the copyright of Teddy Ruxpin as an audiovisual work is limited to a specific series of images. They reason that their tapes create a series of images different from those created by the W.O.W. tapes. Therefore, they conclude that they do not infringe.

Their position is neither practical nor credible as it would require a separate copyright for each possible series of images. The language of the copyright is certainly broad enough to include all movements which may be created by the animated bear. *Midway Mfg. Co. v. Artic International, Inc.*, 704 F.2d 1009 (7th Cir. 1983) is instructive on this issue. In *Midway* the court decided that the creative effort in playing a video game was not sufficient to make each performance of it the work of the player because the player could not create any sequence of images he wanted but had to choose from that which was stored in the video's memory. *Id.*, at 1011–1012. Similarly, when Vector and Suma encoded signals on their tapes they were limited by W.O.W.'s design of Teddy Ruxpin: what parts move, how they move, where the motors are placed. For the above reasons, the Court finds that W.O.W. will establish a substantial similarity between the two works.

In summary, W.O.W. has introduced probative evidence that it is the owner of a valid copyright, that Vector and Suma had access to the copyrighted work, and that the accused work is substantially similar to the copyrighted work. Therefore, the Court finds that there is a substantial likelihood that W.O.W. will prevail on the merits of its claim of copyright infringement. Because the Court finds that it is likely that W.O.W. will succeed on the merits of its copyright claim, it is not necessary for the Court to consider W.O.W.'s claims based on the Lanham Act and state laws against deceptive trade practices.

### IRREPARABLE HARM

█ Generally, a party requesting a preliminary injunction must show that irreparable harm will result in the absence of a preliminary injunction. However, in a copyright infringement case, the requisite irreparable injury is presumed upon a showing of a substantial likelihood of success on the merits. *Apple Computer*, 714 F.2d at 1254. *Atari*, 672 F.2d at 620. Even without the aid of that presumption, W.O.W. has established irreparable harm.

█ The actions of Vector and Suma will impair the distinctiveness of the Teddy Ruxpin character and thus its commercial value in the merchandising market. W.O.W. has a licensing program based on the Teddy Ruxpin character from which it has derived significant financial benefit.

(Goldberg Tr. 19, 21–23, Ex. 4). Robert Goldberg, Vice President of marketing with Worlds of Wonder, testified that success in the merchandising market depends on whether a product has a readily recognizable consistent image. (Goldberg, Tr. 44). The W.O.W. tapes are carefully designed to nurture the character of Teddy Ruxpin and the world in which he lives. When a Vector tape is played in Teddy Ruxpin, it becomes a narrator of fairy tales and looses its unique personality. Its appeal to merchandisers is damaged. It would be impossible to compute the diminishment in commercial value of Teddy Ruxpin and W.O.W. will suffer irreparable damage if a preliminary injunction is not granted.

## BALANCE OF HARDSHIPS

The potential irreparable harm to W.O.W. outweighs Vector's possible loss of approximately $50,000. If this preliminary injunction does not issue, Teddy Ruxpin's commercial value, including his value in the merchandising market, will be significantly diminished. Vector's claim that if the preliminary injunction does issue the entire business will fail is unlikely. Vector was in business before the idea of Teddy Ruxpin compatible tapes arose. (Singer Tr. 231). Vector has continued to develop and market other product lines. (Singer 162–165, 231).

## PUBLIC INTEREST

The Copyright Act evidences a public interest in creative expression. *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14 (2nd Cir.1976). By granting an injunction in the instant matter, the Court is furthering that interest by rewarding W.O.W.'s creativity and preserving the integrity of the copyright laws. Vector and Suma provided no credible evidence of independent creativity on their part.

For the reasons stated above, this Court finds that W.O.W. has successfully demonstrated all the elements necessary for issuance of a preliminary injunction. Accordingly W.O.W.'s motion for a preliminary injunction is GRANTED.

Defendants Vector Intercontinental, Inc. and New Age Communications Inc. d/b/a Suma Recording Studio, their officers, employees, agents and attorneys and all persons in active concert or participation with them, are hereby preliminarily enjoined from advertising, offering for sale, selling or otherwise distributing cassette tapes which activate the Teddy Ruxpin animation system, or purport to do so, pending a trial on the merits of plaintiff's claims.

IT IS SO ORDERED.

## PRELIMINARY INJUNCTION

Pursuant to the Memorandum issued in the above-captioned case the Court orders that defendants, Vector Intercontinental, Inc. and New Age Communications Inc. d/b/a Suma Recording Studio, their officers, employees, agents and attorneys, and all persons in active concert or participation with them, be preliminary enjoined from advertising, offering for sale, selling, or otherwise distributing cassette tapes which activate the Teddy Ruxpin animation system, or purport to do so pending a trial on the merits of plaintiff's claims.

IT IS SO ORDERED.