**Lester JACKSON, Plaintiff,**

v.

**The WASHINGTON MONTHLY CO. et al., Defendants.**

**Civ. A. No. 72–749.**

United States District Court, District of Columbia.

Sept. 24, 1979.

---

1. The existence of a legal duty is a question of law. 4 *Witkin, Summary of California Law* § 493, at 2756 (8th ed. 1974).

Lester Jackson, pro se.

John H. C. Barron, Jr., Rogers & Wells, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Cross-Motions for Summary Judgment in an action brought by Lester Jackson against the Washington Monthly, *et al.* Plaintiff is requesting damages arising out of an alleged infringement of his common law copyright on an unpublished manuscript entitled "The Tragedy of the Peace Movement's Lost Golden Opportunity: The Case for a Senate Fillibuster of Appropriations to End the Vietnam War, and the Case for Electoral Pressure to Bring on the Fillibuster," and the revised version entitled "How to End the War by June 30, 1971." The publication alleged to have infringed plaintiff's manuscript is an article called "Cooing Down the War: The Senate's Lame Doves," written by Defend-

ant John Rothchild and published by Defendant Washington Monthly. This Court has jurisdiction under 28 U.S.C. §§ 1338, 2201 and Rule 56 of the Federal Rules of Civil Procedure.

There is no conflict as to the underlying material facts in this case. Lester Jackson wrote the aforementioned manuscript as a thesis and sent it to the Washington Monthly for publication. The Monthly found the manuscript unsuitable for publication and recommended to Plaintiff that he send it elsewhere. Defendant did, however, keep a copy of the manuscript on file.

In his unpublished thesis, Jackson contended that the focus of the peace movement was misplaced. Instead of trying to elect a majority in both Houses of Congress, the movement should pressure Senate doves to support a fillibuster of war appropriations. The threat of defeat by ballot should be employed to force ineffective Senate doves into action, and any dove who failed to support the fillibuster should be denied reelection. He contended that the peace movement had been content with speeches and symbolic victories and that a change in the approach and demeanor of the movement would be necessary to end the Vietnam War.

Subsequent to its dealings with Plaintiff, Defendant Monthly published Rothchild's article. The article deals exclusively with the impotence of Senate doves and ponders why, if the war was desperate (as it had been characterized rhetorically by many dove Senators) anti-war Senators did not behave desperately. Plaintiff is mentioned twice in the article. He is cited as someone who tried to persuade some dovish Senators to fillibuster, and is quoted to support the notion that peace constituencies were satisfied with resolutions and symbolic victories.

Since this suit is based on an alleged common law copyright infringement, the law of the District of Columbia is controlling.[1] To recover for the infringement of his copyright, Plaintiff must show (1) ownership and copyrightability of the alleged copied material,[2] and (2) access to the work by Defendant,[3] (3) substantial similarity between Plaintiff's and Defendant's work,[4] and (4) that Defendant copied Plaintiff's manuscript.[5] In the instant case, ownership of and access to the Jackson manuscript is not disputed. It is uncontroverted that Defendants copied two sentences from Plaintiff's work; indeed, those sentences are credited to him. Defendants vigorously assert, however, that there is no substantial similarity between the works in question and that no other copying was performed.

It is evident from a perusal of the literature in question that some overlap of ideas exists. Both works deal with the behavior of Senate doves, and both criticize those doves for their inaction. An idea cannot be copyrighted, however; no copyright infringement action will lie unless the *way* those ideas are expressed is similar.[6] Furthermore, even if there is some similarity in the modes of expression, copying must be inferred from this similarity. Thus, the use of particular words or common phrases does not give rise to an action for copyright infringement; it is in the arrangement of words that a cause of action must be based.[7]

1. See *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. 3 Nimmer on Copyright § 13–03[A] p. 3–4 (1978 ed.).

3. *Lapsley v. American Institute of Public Accountants,* 246 F.Supp. 389 (D.D.C.1965), at 390.

4. Id. at 390.

5. Id. at 390.

6. Id. at 391.

7. The English language is not broad enough so that similarity of phraseology and word usage will not appear in material on the same topic. . . . It would be ridiculous to consider such similarity a copyright infringement. Plaintiff has no monopoly on the words or phrases he has used. Plaintiff's right is to the arrangement of the words he has selected to express his ideas, not to the ideas or words themselves. *Lapsley,* supra, at 391.

This Court finds, as a matter of law, that with the exception of the two sentences attributed to Jackson, there is no similarity between the works in question.[8] The question remains, however, whether the appropriation of those two sentences renders the articles similar, and if so, whether the similarity is substantial.

It is clear that similarity is to be ascertained by a comparison of the works, taken as a whole, rather than through "hypercritical dissection of the sentences."[9] Such rigorous analysis is not needed to locate the similar portions, however. Defendant has attributed them to Plaintiff. Some similarity between works is permissible. For an infringement to have occurred, a substantial, or "material" amount of Plaintiff's work must have been appropriated. Substantiality is determined by comparing the copied material to Plaintiff's manuscript, taken as a whole.[10] If "the value of the original is sensibly diminished, or the labors of the author are substantially to an injurious extent appropriated by another,"[11] a copyright infringement exists.

The thrust of Jackson's manuscript concerned persuading Senate doves to fillibuster against war appropriations. The viability of fillibustering was depicted in great detail. Senate ineffectiveness was attributed to the doves' failure to employ radical action, and electoral pressure was deemed necessary to encourage such action. Underlying this was the notion that electoral force had not been used in the past because peace constituencies had been satisfied with rhetoric. To terminate the war, Jackson asserted, the peace constituencies must be more demanding.

The appropriated sentences[12] deal solely with the satisfaction of the peace constituencies. They are merely peripheral supports for the basic thrust of Plaintiff's manuscript, and in no way reflect Plaintiff's work, taken as a whole. Their use in no way diminishes the value of the original. Defendants' use of the Jackson material could only further Plaintiff's reputation and inspire demand for publication of his manuscripts.

Jackson also contends that his labor was unfairly appropriated. This is wholly unsupported by the evidence, which reflects that Defendant Rothchild performed an extensive amount of research before writing his article.

Summary Judgment is an appropriate form of relief when it eliminates a useless trial and avoids "long and expensive litigation productive of nothing."[13] This is especially true in the instant case, where the materials on which the claim of infringement is based are before the Court, and "[n]o amount of expert or lay testimony as

---

8. Jackson has provided the Court with an exhibit detailing the alleged similarities in language. The following are examples from that exhibit:

> *Jackson*: In a sense, these are the real war criminals . . . these Senators understand it [the horror] fully and vote to continue it. They are the criminals.
> *Rothchild*: . . . in the context of the Senate's required assent to Vietnam, the doves become partners in crime.
> *Jackson*: The idea that speaking out constitutes "courageous leadership" is indicative of the whole sorry mess we are in. If speeches could end the war, we would have been out of Vietnam long ago. . . .
> *Rothchild*: Until recently, dove Senators have been committed only to a war of rhetoric, which they won long ago. There was a time when even words were courageous, but the war has won a victory over the words by seducing them, so that it is not distinctive to

talk against the war, even while you are escalating it.

9. *Lapsley*, supra, at 391; *Costello v. Loew's Inc.*, 159 F.Supp. 782 (D.D.C.1958), at 788.

10. Nimmer, supra at 13–29.

11. Id. at 13–31. .

12. "Anything done by congressional peace advocates has been gratefully accepted and applauded," writes Lester Jackson. "Dove constituents have been impressed with debates and hearings, with resolutions and with resolutions repealing resolutions, with moral victories and symbolic events."

13. *Washington Post Co. v. Keogh*, 125 U.S. App.D.C. 32, 365 F.2d 965 (D.C.Cir. 1966) 365 F.2d at 968, 125 U.S.App.D.C. at 35, *cert. den.*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548.

to fancied similarities could change the obvious content of the exhibits." [14]

Accordingly, it is by the Court this 24th day of September, 1979,

ORDERED, that Defendants' Motion for Summary Judgment is hereby GRANTED and Plaintiff's Motion for Summary Judgment is hereby DENIED.

14. *Costello v. Loew's Inc., supra,* at 789; *Gethers v. Blatty,* 283 F.Supp. 303 (D.C.Cal.1968).