**Charles SILVA, Plaintiff,**

v.

**Shirley MacLAINE, Defendant.**

**No. 87–4500.**

United States District Court,
E.D. Michigan, S.D.

July 27, 1988.

Anthony Muraski, Detroit, Mich., for plaintiff.

Herschel Fink, Detroit, Mich., for defendant.

GILMORE, District Judge.

This is an action brought by the Plaintiff against Defendant claiming copyright infringement under 17 U.S.C. § 101 and following in one count and unfair competition in the other count. The Plaintiff alleges that Defendant Shirley MacLaine's book, "Out On a Limb", and the subsequent televised film version of the book infringed their copyright in Plaintiff Charles Silva's book "Date With The Gods." The unfair competition claim stems from a letter by the Defendant threatening to sue Plaintiff Silva as a result of his claiming that he is a certain character "David" in MacLaine's book and also because he is using Shirley MacLaine's name and picture to promote lectures and the like.

The Plaintiffs are the author Silva and Living Waters Publishing and Distributing Company, the assignee of all of Silva's rights in "Date." The Defendants are MacLaine, Bantam Books which published "Out On a Limb," American Broadcasting Company which produced the television version, and three other individuals who participated in the television version.

We are here on Defendant's motion for summary judgment and technically, I guess, you would say there might be cross motions for summary judgment since the Plaintiff denominates their response to Defendant's motion as an answer to Defendant's motion for summary judgment and in the alternative Plaintiff's motion for summary judgment.

Defendant claims six independent bases for granting summary judgment: Lack of substantial similarity, fair use, the granting by Silva to MacLaine of an oral non-exclusive license in "Date With the Gods," laches, equitable estoppel, and with reference to the second count for unfair compe-

tition, a claim of preemption of the copyright law and also failure to state a claim.

We start with "Date With the Gods." This was written by Plaintiff Silva, published in 1977 and republished in 1987, with some minor changes, after Silva assigned all his rights in the work. "Out On a Limb" was published by Defendant MacLaine in 1983 by Defendant Bantam Books and the film version was televised in January 1987.

Silva's book, "Date with the Gods," is about Silva's experiences in Peru in the 1970's. He tells of his encounters with an extraterrestrial woman high in the Andes and his visits with her to the healing mineral baths. The book is mainly a running account of the dialogue between Silva and this extraterrestrial, whose name is Rama.

There are several overriding themes to the conversations and therefore Silva's book itself. Proof of the existence of UFO's and visits to earth by extraterrestrial beings from the beginning of time is one of these overriding themes and indeed Silva briefly recounts several rides with Rama in a UFO called a Vimana. In many of their conversations, Rama points to specific portions of the Bible as evidence of UFO's and extraterrestrials visiting the earth, for example, stories about "chariots of fire."

Another topic in the book is the composition of one's spirit. Rama explains that the spirit is made up of ananas and anionites which are theoretical particles in the space between the neutron, proton, and electron of an atom and which holds the atom together. According to her, as recounted by Silva, a person can voluntarily separate his spirit, composed of these ananas and anionites, from his physical body and engage in out of body travel in the world and in outer space. This phenomenon is referred to as astral projection.

Although reincarnation is not discussed in detail there is the definite implication in "Date With The Gods" that when one dies, his spirit might become embodied in another living form. The difference between astral projection and death is that in astral projection a silver cord keeps the spirit attached to the physical body, and once the experience is over, the spirit returns to the body and life continues as before. In death, the silver cord is severed.

Finally, Rama placed heavy emphasis on the tenets that one should love God and love others as one loves oneself. Again, there are many specific references in "Date With the Gods" to the Bible and the teachings of Jesus Christ. The Book of Revelations is heavily emphasized. Another overriding theme in "Date With The Gods" is that the end of the world is soon approaching; there will be an Armageddon; and those persons to be saved will only be a chosen 144,000 who have come to accept the teachings of God and Jesus Christ as set forth by the extraterrestrial Rama in "Date."

Now MacLaine's book, "Out On A Limb", is her personal story of her voyage of self-discovery during her forties and her quest for spiritual understanding. In the course of this quest MacLaine describes an affair she had with a prominent British politician. Although one theme of the book is that there are spiritual explanations for one's lifetime experiences including problems in personal relationships, for example, that two lovers had known one another or perhaps had been enemies in a previous lifetime, much of the book recounts her affair and her travels to various parts of the world as she learns more about the spirit world. This includes MacLaine's encounter with "trance mediums" which are the same as or at least similar to psychics. A trance medium is a person who is inhabited by an unembodied spirit, that is, a person who has died but has not reincarnated and who becomes an instrument through which the spirit expresses itself and carries messages to those who consult it. MacLaine recounts her consultations with various trance mediums, a practice known as channeling, to obtain information about herself and previous incarnations. MacLaine's book focuses heavily on the theory of reincarnation and this takes her into the theory that is contained in "Date With The Gods", that a person's spirit is the same as what composes the spaces between the neutron, proton and electron

of an atom, and that one can separate one's spirit from one's physical body, the two remaining attached by a silver cord. As does Silva in "Date With The Gods", MacLaine recounts her experiences with astral projection.

MacLaine, as did Silva, at Ramas's direction read numerous works by other authors and discussed these various topics with others in her exploration of and quest to substantiate the spiritual world. It is undisputed that among the people MacLaine talked to during her years of research was Silva and among the books she read was "Date With The Gods".

The facts also show that in 1977 MacLaine traveled in the Andes of Peru with Silva and that a portion of the book recounts these travels and her conversations with Silva. She does not use Silva's name in "Out On A Limb", but she refers to a character named David throughout the book as a spiritual guide and as the person with whom she traveled in Peru. In the introduction to "Out on a Limb" MacLaine explicitly states: "Some of the people who appear in this book are presented as composite characters in order to protect their privacy and the sequence of some of the events is adapated accordingly. But all events are real." In the lawsuit MacLaine takes the position that David is one of these composite characters and Silva is not David but only a part of David. In the book David takes MacLaine to the same part of the Andes in which Silva traveled and tells her of his encounter with an extraterrestrial woman who MacLaine refers to as Mayan.

Now it is true that in 1977 Silva sent MacLaine a copy of "Date With The Gods" unsolicited. It is undisputed that she discussed it with him and ultimately traveled with him to the Andes. It is undisputed that he encouraged her "to provide wide dissemination of some of the ideas that" they had discussed. Eventually she wrote "Out On A Limb" and sent a 700 page draft of the manuscript to Silva, and he responded with a three page handwritten letter offering suggestions and comments. She said at that time, and this was in 1981,

that she made it clear that she meant to publish and she relied in part on some of the comments and suggestions of Silva and on some of his descriptions of events.

In other words, after the trip, after the drafting of the original manuscript by MacLaine, Silva reviewed it in 1981 and, as I say, made these suggestions and made suggested corrections in the book. The book, "Out On A Limb", was published in 1983 and MacLaine gave Silva an autographed copy of the book which became a best seller. In 1985 she told Silva she was working on a television version of "Out On A Limb" and she kept him informed of its progress during 1986. Until the service of the Complaint in this action, which was filed in 1987, December, the end of 1987, Silva never made any objections of any kind known to MacLaine.

Now it is also undisputed that in promoting his book, "Date With The Gods", Silva has represented himself as David in MacLaine's book, "Out On A Limb", and he has also used MacLaine's name and likeness and the covers of her book in his promotional endeavors. And it was the result of that that a letter was sent on November 19, 1986 by general counsel of Bantam warning that the Defendants considered actionable the actions of the Plaintiff and demanded that Silva discontinue misrepresenting himself as David and his advertising by using the cover of Bantam's publication "Dancing In The Light" and by the appropriation of MacLaine's name and likeness for commercial purposes. Now that letter, in which the Defendant warns Plaintiff to stop doing the things they were doing, is the basis for the second count of Plaintiff of unfair competition.

It is Plaintiff's basic claim that the similarities between "Date With The Gods" and "Out On A Limb" and the subsequent film amount to copyright infringement. And, as I say, in the other count they sue for unfair competition.

Now the basic argument of the Defendant is there is not sufficient similarity between the two works as a whole to support a copyright infringement action and the Court may therefore grant a summary

judgment for Defendant on the claim of copyright infringement. I think we will begin with the basic proposition that "a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not to the idea itself...." The Supreme Court pointed that out some 34 years ago in *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630. In Mazer the Court gave as an example:

> "Thus, in *Baker v. Selden,* 101 US 99, [25 L.Ed. 841] the Court held that a copyrighted book on a peculiar system of bookkeeping was not infringed by a similar book using a similar plan which achieved similar results where the alleged infringer made a different arrangement of the columns and used different headings."

And the Court emphasized that:

> "The copyright protects originality rather than novelty or invention—conferring only the sole right of multiplying copies. Absent copying there can be no infringement of copyright."

Now in the Sixth Circuit the Court has not shied from affirming summary judgment in copyright cases on the grounds of lack of substantial similarity. A leading case on the subject is *Mihalek Corporation v. State of Michigan* and another one is *Wickham v. Knoxville.* The *Mihalek* case is 814 F.2d 290, a 1987 case from the Sixth Circuit, remanded on other grounds at 821 F.2d 327, and the *Wickham* case is *Wickham v. Knoxville,* 739 F.2d 1094, a 1984 case in the Sixth Circuit.

Now in *Wickham* the Court affirmed summary judgment for the Defendant where the Plaintiff alleged substantial similarities amounting to copyright infringement between Plaintiff's architectural drawings for a tower structure and the design of the tower structure that was eventually constructed by the Defendant at the Knoxville World's Fair. The Sixth Court made clear at Page 1097 that:

> "A Court may compare the two works and render a judgment for the Defendant on the ground that as a matter of law, a trier of fact would not be permitted to find substantial similarity."

The Court explained that there are two essential elements to a copyright case: Ownership of the copyright by the Plaintiff and copying by the Defendant, and that to prove copying by the Defendant the Plaintiff must prove access as well as substantial similarity. The cases make clear that regardless of access, Plaintiff must demonstrate substantial similarity. It simply need not be a striking similarity but substantial similarity.

Also in *Mihalek,* where the Court affirmed summary judgment for the Defendant on the grounds that there was no substantial similarity between Plaintiff's and Defendant's public relations program for the State of Michigan, and it was subsequently remanded on another issue which does not affect the ruling just mentioned, the Court emphasized in that case that the burden is on Plaintiffs to prove substantial similarity between the copyrighted material and the allegedly infringing material, and the Court attempted to clarify the basic rule that protection is given only to the expression of the idea, not the idea itself. It said at page 294:

> "While the demarcation between idea and expression may not be susceptible to overly helpful generalization, it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization."

The Court also said on page 295:

> "A finding of substantial differences between the copyrighted material and the alleged copy has been found to justify a judgment for the Defendant in copyright infringement proceedings.
>
> "Finally, as a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other."

The Court cautioned, finally, that a general impression of similarity is not sufficient to make out a case for infringement.

■ With this legal frame work I think it is time to engage in the exercise certainly implied in *Wickham,* that similarity is determined by a comparison of the works. Now Plaintiffs have conceded there can be no copyright infringement found as a result of similarities between Silva's and MacLaine's "factual descriptions of the Great Pyramid of Giza, a road sign in the Andes asserting Flying Saucers Do Exist, UFO Contact Point, the river, mineral baths, the Andes and the names of and mileage distance between cities ..." Thus, these portions of the books will not be discussed.

Defendants have prepared a fairly comprehensive schedule of passages containing similar material both in "Date With The Gods" and "Out On A Limb". Most of these examples are, in my opinion, stretching the concept of similarity to absurd extremes. There seem to be about five specific portions of the books that Plaintiff would emphasize in their position that there is substantial similarity.

First is a description of Rama by Silva in "Date With The Gods" and the description of David in MacLaine's book of Mayan. Compare: "Date With The Gods", pages 20 and 21:

> "By her moves and speech I gathered that she was a well educated American kid. More or less in her twenties, judging by her looks and fair skin, medium height, petite, and very pretty face with long black hair. She was wearing jeans, jail like shirt, and a heavy army coat with some synthetic fur around the hood. She had on hiking books, and her appearance was pleasant even though hippies have never been my cup of tea as far as socializing was concerned. She had all the characteristics of being one of those pot heads who roam around the world, hitchhiking, asking for spare change.

> \*     \*     \*     \*     \*     \*

> "There was something strange about her eyes; though I could not put my finger exactly on what it was."

Compare that with "Out On A Limb", pages 299 to 300:

> "When I first saw her I thought she was the most beautiful woman I had ever seen. She seemed almost translucent, I mean her skin was shining. I didn't notice what she was wearing, jeans, probably, but the way she moved was like flowing. And I remember I could not take my eyes off her face.

> \*     \*     \*     \*     \*     \*

> " 'What else did she look like?' I asked. 'Small,' he said. 'Real small and petite, with long thick black hair, this marvelous very white transparent skin, and dark dark eyes almost almond-shaped eyes. Not Oriental eyes, I mean not with those lids, but with a tilt, a slant to them.' "

There may be some similarities between these descriptions but certainly there is no outright copying and indeed the picture painted in the reader's mind could be of two very different looking women. Moreover, Silva does not deny that he described the extraterrestrial person he met to MacLaine, and Silva's copyright in "Date With The Gods" cannot bar MacLaine from describing interviews she had with others and her own experiences. I think simply stated these two passages are not substantially similar and an average reasonable layperson, upon examination, could not find substantial or sufficient similarity to establish copyright infringement.

A second area of arguable similarity between the two books is where atomic structure and its relationship to the spiritual world is discussed. Compare "Date With The Gods" Pages 74 and 118 to 124, with "Out On A Limb" at Pages 322 to 327. To the extent that both works review basic scientific theories concerning the structure of the atom, neutrons, protons and electrons, and their rotation akin to a miniature solar system, clearly there can be no copyright infringement there. Scientific facts lend themselves to a very limited manner of expression and do not create an inference of copying. For authority you can see 3 Nimmer on Copyright, Section 13.03(A) at Pages 13–33.

Other similarities between the works occur in their description of the matter between these basic components of the atom, which matter holds the atom together and

which is what the soul or spirit is made of. MacLaine's work uses the following description of this force, as does Silva's work: "Third force," "organizer of all matter," "thinking element of nature," "the cohesive element of the atom," and "soul" or "spirit." Clearly the two authors are on to a substantially similar idea, but not only. is that idea not the unique property of Plaintiff Silva, for many other authors have discussed this theory, but furthermore one must keep in mind that it is the expression of the idea that must be examined. An overall examination of these portions of the two books reveals that there are substantial differences between the copyrighted material and the alleged copy, such that one must conclude in Defendant's favor that there is no substantial similarity. For example, Silva's work includes drawings and a discussion of ananas and anionites that are not included in MacLaine's work. While both mention that this third force or spirit never dies unlike the physical body, MacLaine's work makes a much clearer connection between this fact and the belief in reincarnation and karma. These passages merely raise a general impression of similarity which under *Mihalek* is not sufficient to make out a case of infringement.

Third, in both works the authors describe their experiences with astral projection, that is, out-of-body experiences when the spirit temporarily leaves the body and travels to other places on earth or into the cosmos. The only real similarity between the passage in "Date With The Gods" at Page 174 to 178 and with "Out On A Limb" at Pages 327 to 329 is that each author recalls, as his or her spirit left the body, observing a silver cord maintaining the attachment between the spirit and the body. However, the existence of this silver cord is a phenomena recognized in other metaphysical literature and MacLaine cannot be considered to have copied an expression of an idea from Silva. In both works the experience with astral projection takes place when the authors are gazing into candles. Silva's description is that of Rama instructing him on the technique to use in astral projection, which he finds successful, and which he describes as be-

coming part of the flame and separated from his body. In contrast, MacLaine describes her experience as one that occurred, not as an effort, but almost spontaneously and without warning. She actually describes leaving the earth's surface and soaring so high that she can see the curvature of the earth. There is simply no copying by MacLaine of Silva's work in these passages.

Fourth, there is a claimed similarity in passages where Rama gives Silva a bracelet in "Date With The Gods" and David gives MacLaine a bracelet in "Out On A Limb." In "Date With The Gods" the citation is at Pages 360 to 361 and in "Out On A Limb" at Page 322. This is "Date With The Gods":

"I should give you this. She placed a metal band around my left wrist. Offhand I couldn't tell what kind of metal it was. It looked like the P.O.W. bands people were wearing during the Viet Nam War. As she adjusted it, she was saying: 'This is plain stainless steel, no one would want to steal it from you. You can get these at any store for 65 cents, but this one has a special electromagnetic charge that is tuned into your personal vibrations.'

\*      \*      \*      \*      \*      \*

"There are also a couple of my vibrations in there. Many times you will hear me think. Since this is steel it will keep away evil forces. 'What do you mean?' 'Evil forces, are also third energy, very capable and powerful: Witchcraft, voodoo, jinx, curses, vampires, etc., all those can be repelled by steel.' "

And the passage from "Out On A Limb" is this:

"As we headed that way David reached into his pocket and handed me a bracelet of what looked like silver. It was just like the one he wore all the time. 'Mayan gave me this,' he said. 'I want you to have it. Wear it on your wrist all the time when you are here. It will help make things more clear.'

"I put it on wondering what he meant. 'What's it made out of?' I asked. 'Oh,'

he said. 'I don't know. It's hard to say but it works.'

'What do you mean? It makes what work?' I could not understand what he was talking about.

'Well, when I wear mine, I feel my thoughts are somewhat more amplified so I think with more clarity.'

'How come?'

'I don't know exactly,' he said, 'It is something to do with what she calls the third force.' "

Simply, there is no substantial similarity between these two passages, except the idea of giving a bracelet from one person to another.

Finally, in their brief Plaintiff complains of a similarity between Silva's description of extraterrestrials he met on his UFO ride in "Date With The Gods" and MacLaine's recounting of David's description in another book she wrote, "It's All in the Playing." In "Date With The Gods" Silva writes:

"He had a nice face; benevolent featuring attitude, long nose, and slanted eyes—not like Rama's, not oriental either. When he looked at me I noticed he had no eyelashes and he didn't blink."

According to Plaintiffs, "It's All in the Playing" contains the following passage although we do not have a copy: ".... human except that he was small with ears very close to his head, and had no eyelashes or eyelids." Not only is MacLaine's expression not a copy of Silva's, but I cannot conclude merely from the comparison of these limited passages that MacLaine's work infringed Silva's copyright in "Date With The Gods".

I think in summary, although there are some similarities between the passages set forth above, a close examination reveals there is no substantial similarity and that an average reasonable layperson upon such examination could not find substantial or sufficient similarity to establish copyright infringement.

Furthermore, one must consider these similarities in the context of the entire works at issue. The proper inquiry is whether Defendant's alleged infringing work has captured the total concept and feel of the Plaintiff's work. While both discuss similar ideas, it is in a very different context. Silva seems intent on relating his experience at meeting an extraterrestrial who, in this brief, he for the first time declares is a literary device and was not real. The clear implication of the book is that he actually met an extraterrestrial and is conveying her teachings to his readers. MacLaine, on the other hand, in her book is embarking on sort of a research project aimed at giving her peace of mind and explaining where she fits in in this world and how she can come to terms with her personal relationships.

I conclude that there is no substantial similarity between Silva's "Date With The Gods" and MacLaine's "Out On A Limb", and that in fact there are substantial differences between the copyrighted material and the alleged copy that justify the granting of Defendant's motion for summary judgment and I will grant the Defendant's motion for summary judgment on Count 1 based upon lack of substantial similarity.

■ I do want to say a word, however, about the theory of non-exclusive license on Count One. It appears to me that in light of Silva's relationship with MacLaine, the facts and circumstances surrounding it, his correcting the text, his giving advice, his encouraging the writing of the book, his sending of the manuscript, his revisions, all make clear, and the fact that no Complaint was made at any time until some six and a half years later, that it makes clear that Silva granted MacLaine a license, an oral license, and certainly the grant of permission may be given orally or may be implied from conduct, 3 Nimmer Section 10.03(A) at Pages 10–36, and whatever its origin, a non-exclusive license is enforceable because of the impracticality of requiring written licenses in all circumstances. So I think it is clear here that Silva granted MacLaine a non-exclusive oral license to use part of "Date With The Gods."

■ With reference to laches it seems to me that that can be an additional basis for granting summary judgment. I mean Silva knew in 1981 what MacLaine was publish-

ing, what they were doing, and waited until 1987 to bring any action, and I do feel that that constitutes laches.

With reference to the unfair competition count, Count Two, I think there is no question that that must be dismissed. First, the only basis, jurisdictional basis was that it was appended to a substantial and related claim of copyright infringement. However, it appears to me that there is a clear preemption on it. Secondly, there is just no statement of claim of unfair competition here. It appears to me the writing of a letter saying that a suit will be brought unless he stops representing himself as David and unless he stops using MacLaine's picture in publicity just states no claim for unfair competition.

So for these reasons I will grant summary judgment, no cause of action on the entire case.

You may present an order.