**Damon BLACK**

v.

**Vern GOSDIN; Buddy Cannon; Hank Cochran; Dean Dillon; Tree Publishing Co.; CBS Records, Inc.; Sabal Music; Larry Butler Music, Inc.; Hookum Music; Kim Espy d/b/a Hear No Evil; Duck Soup Music Group, Inc., d/b/a Larry Bulter Productions.**

No. 3:88–1012.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 29, 1990.

S. Ralph Gordon, Nashville, Tenn., for plaintiff.

Richard H. Frank, Jr., Craig J. Donaldson, R. Horton Frank, III, Dearborn & Ewing, Nashville, Tenn., for Dean Dillon, Larry Butler, Kim Espy and Duck Soup Music Group, Inc.

Scott F. Siman, Benson & Siman, Nashville, Tenn., for Buddy Cannon and Sabal Music.

Robert C. Osterberg, New York City, Todd J. Campbell, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for Vern Gosdin, Hank Cochran, Tree Pub. Co., Inc. and CBS Records, Inc.

## MEMORANDUM

WISEMAN, Chief Judge.

This is an action for copyright infringement under the federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* The matter is before the Court on a motion for summary judgment by defendants Dean Dillon, Larry Butler Music Co., Inc., and Kim Espy, d/b/a Hear No Evil and Duck Soup Music Group, Inc. ("defendants"). For the reasons stated below, the Court now grants the motion for summary judgment as to those defendants.

Accepting plaintiff's representation of the facts as true, Damon Black composed the music and lyrics to the song "The Jukebox" sometime in 1985. Black did not perform the song outside his home or record it until December 1, 1986, when he recorded the song at a "demo" session in a recording studio in Nashville, Tennessee. Two non-moving defendants, Vern Gosdin and Buddy Cannon, were present at that "demo" session. At that time, Gosdin expressed interest in composing some songs with Black and was especially enthusiastic about the possibility of publishing "The Jukebox." Gosdin requested a copy of the entire "demo" session, and Cannon, who worked at the studio, told Black that he would give Gosdin a tape. Several months later, a recording of Vern Gosdin singing "Set 'Em Up Joe" was released by another non-moving defendant, CBS Records, Inc.

Plaintiff claims that the defendants (together with non-moving defendants) violated the federal Copyright Act by copying the lyrics of his copyrighted composition, "The Jukebox," without his authorization, and publishing this material in the form of the song "Set 'Em Up Joe." Plaintiff seeks to recover royalties defendants have received from the performance, production and distribution of said composition.[1]

In order to establish copyright infringement, plaintiff must prove that he owns the copyright in the composition and that the defendants copied his work. *Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 276 (6th Cir.1988); *Wickham v. Knoxville International Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir.1984); *Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corp.*, 562 F.2d 1157 (9th Cir.1977); 3 *Nimmer on Copyright* § 13.01 (rev'd 1989). Defendants concede for the purposes of summary judgment that plaintiff is the owner of the copyright in "The Jukebox." Copying may be proved by showing "that the defendant or the person who composed the defendant's work had access to the

---

**1.** Plaintiff does not allege infringement of his song's musical score. In addition, his allegation of infringement against the moving defendants does not extend to "It's Not Over Yet," a song allegedly infringed by non-moving defendants.

copyrighted material and that the defendant's work is substantially similar to the protected work." *Nino Homes,* 858 F.2d at 277; *Wickham,* 739 F.2d at 1097.

### 1. Access

■ Defendants argue that they are entitled to summary judgment because plaintiff cannot establish that any of the defendants had access to the copyrighted lyrics prior to the composition of the allegedly infringing song. It appears that defendants Cannon and Gosdin had access to plaintiff's composition on December 1, 1986. Defendant Dillon asserts in his affidavit that he, Cannon and two other non-moving defendants composed "Set 'Em Up Joe" at a cabin in Gatlinburg, Tennessee, on November 8, 1986. Plaintiff alleges in his deposition testimony that the defendants "backdated" the composition of "Set 'Em Up Joe" in order to mask their copying of his composition.

Plaintiff is not in a position to present conclusive proof that the allegedly infringing song was not composed until after Gosdin and Cannon had been exposed to Plaintiff's song. Plaintiff has, however, presented evidence from which a jury could reasonably make such an inference. The affidavit of Albert Paul Pachucki, chief recording engineer on plaintiff's December 1, 1986 "demo" session, states that Gosdin and Cannon were present at the session. Photographs submitted by plaintiff show Pachucki, Gosdin, Cannon and plaintiff together in the studio. In his affidavit, Pachucki states that plaintiff's son took several pictures at the December 1, 1986 session. Pachucki also states that he heard Gosdin suggest to plaintiff that "The Jukebox" could be improved by alluding to "Hank Williams and Ernest Tubb" instead of "Ferlin Huskey." Pachucki states further that he heard Gosdin and plaintiff discussing the prospect of collaborating as songwriters, and that he personally delivered a tape copy of plaintiff's December 1, 1986 "demo" session to Cannon.

At the summary judgment stage, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The factual question of access will necessarily turn on the trier of fact's assessment of the credibility of defendant Dillon and any other witnesses testifying as to the date of composition of the allegedly infringing song. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Consequently, the element of access remains a genuine issue of triable fact.

### 2. Substantial Similarity

■ Notwithstanding the genuine factual dispute regarding access, summary judgment may be granted for the defendants if the Court determines as a matter of law that the two works are not substantially similar. *See Mihalek Corp. v. State of Michigan,* 814 F.2d 290, 293 (6th Cir.1987) (citing *Wickham v. Knoxville International Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984)). *See also Pendleton v. Acuff–Rose Publications, Inc.,* 605 F.Supp. 477, 480 (M.D.Tenn.1984). *Accord Warner Bros., Inc. v. American Broadcasting Corp., Inc.,* 720 F.2d 231 (2d Cir.1983). It is clear that the allegedly infringing song conveys the same idea or theme as plaintiff's song. However, "[i]deas are not protected by copyright, only expressions of ideas." *Wickham,* 739 F.2d at 1097 (citing *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954)). *See also Pendleton,* 605 F.Supp. at 481 ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself") (quoting *Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976)). Moreover, this idea-expression dichotomy is expressly codified in the Copyright Act of 1976, which provides in pertinent part as follows:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle,

or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work.

17 U.S.C. § 102(b). Thus, the relevant question in this case is whether the defendants' song is substantially similar to plaintiff's with respect to the expression of the shared idea.

Plaintiff relies on the case of *Arnstein v. Porter,* 154 F.2d 464 (2d Cir.1946), *cert. denied,* 330 U.S. 851, 67 S.Ct. 1096, 91 L.Ed. 1294 (1947), to support its argument that summary judgment should not be granted in this case because similarity of expression is "an issue of fact which a jury is peculiarly fitted to determine." *Id.* at 473. The *Arnstein* court, however, made clear that it did not intend to categorically preclude disposition of the similarity of expression question at summary judgment: "We should not be taken as saying that a plagiarism case can never arise in which absence of similarities is so patent that a summary judgment for defendant would be correct." *Id.* Also, the only similarities relevant to the issue of substantial similarity are those that bear on *copyrightable* elements of plaintiff's song. *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). *See Mihalek,* 814 F.2d at 294 ("It is the expression of the ideas, not the general concepts, that are to be examined particularly, because ideas themselves and general concepts are not copyrightable"). Accordingly, even the *Arnstein* rule allows for summary judgment in a case where there is an obvious lack of similarity between the copyrightable elements of the plaintiff's expression of a given idea and the defendant's expression of the same idea.

The appropriateness of determining lack of substantial similarity as a matter of law was explained by the Second Circuit in *Warner Bros., Inc. v. American Broadcasting Corp., Inc.,* 720 F.2d 231 (2d Cir. 1983). Affirming summary judgment for the creators of the television character "Greatest American Hero," on the ground that their treatment of the idea of a superhuman hero was not substantially similar to the plaintiffs' characterization of "Superman," the court stated:

"The 'substantial similarity' that supports an inference of copying sufficient to establish infringement of a copyright is not a concept familiar to the public at large. It is a term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement."

720 F.2d at 245. *Cf. Pendleton,* 605 F.Supp. at 484 ("The idea-expression dichotomy attempts to reconcile two competing social interests: rewarding individual creativity, while at the same time permitting the public to enjoy the benefits from use of the same subject matter" (citing *Sid & Marty Krofft Television,* 562 F.2d at 1163)).

Similarly, the Sixth Circuit affirmed a grant of summary judgment for the defendants in *Wickham v. Knoxville International Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984), on the ground that the plaintiff's architectural design and the design of the defendant's "Sunsphere" on the site of the 1982 World's Fair in Knoxville, Tennessee, were not substantially similar. The court expressly considered the *Arnstein* principle and concluded that "a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact *would not be permitted to* find substantial similarity." *Wickham,* 739 F.2d at 1097 (emphasis added). *Accord Nelson v. PRN Productions, Inc.,* 873 F.2d 1141, 1143 (8th Cir.1989); *Jason v. Fonda,* 526 F.Supp. 774, 777 (C.D.Cal.1981), *aff'd,* 698 F.2d 966 (9th Cir.1982). This Court, therefore, may determine whether there is any similarity between the two works that falls within the scope of copyright protection provided by Congress. "If a case lies beyond these limits, the contrary view of a properly drawn sample of the population, or even of a particular jury, cannot be permitted to enlarge (or diminish) the scope of statutory protection enjoyed by a copy-

right proprietor." *Warner Bros.*, 720 F.2d at 245.

■ Plaintiff argues, nonetheless, that the question of similarity of expression must be determined under the "intrinsic" test promulgated in *Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corp.*, 562 F.2d 1157 (9th Cir.1977). Plaintiff contends that the very nature of this test counsels against a grant of summary judgment in this case. The standard for determining similarity of expression under the intrinsic test is "the response of the ordinary reasonable person." *Id.*, 562 F.Supp. at 1164. In contrast to the "extrinsic" test for similarity of idea, under which it is appropriate to consider expert testimony on specific criteria such as the particular subject matter and setting of the competing works, under the intrinsic test for similarity of expression it is inappropriate for the court to consider expert testimony or to undertake "analytic dissection." *Id.*, (citing *Arnstein*, 154 F.2d at 468).

The Ninth Circuit further stated that the intrinsic test does not turn on isolated similarities or dissimilarities in the two works, but rather on the "total concept and feel" of the respective works as they would be perceived by an audience of reasonable laypersons. *Sid & Marty Krofft Television,* 562 F.2d at 1166–1167; *Litchfield v. Spielberg,* 736 F.2d 1352, 1356–1357 (9th Cir. 1984). *Accord Worlds of Wonder, Inc. v. Vector Intercontinental, Inc.,* 653 F.Supp. 135, 139 (N.D.Ohio 1986). Underlying the "total concept and feel" standard is the principle articulated by Judge Learned Hand, that where two works are remarkably similar though not identical in form, "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487 (2d Cir.1960), *quoted in Worlds of Wonder,* 653 F.Supp. at 139. Thus, in such cases "it is the *combination* of many different elements which may command copyright protection because of its particular subjective quality." *Sid & Marty Krofft Television,* 562 F.2d at 1169 (emphasis in original).

*Accord Reyher v. Children's Television Workshop,* 533 F.2d 87, 91–92 (2d Cir.1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976).

In essence, then, plaintiff's argument is that defendants unlawfully appropriated the "particular subjective quality" of his copyrighted lyrics by incorporating in their song the same combination of elements. The elements common to both songs are a jukebox, a bar, a jilted lover, his emotional dependency on a particular country music song, and the perception of this man by those around him. *See* Appendix. It is difficult to say, however, whether these elements constitute the expression of an idea or the idea itself. Indeed, in *Sid & Marty Krofft Television,* the case on which plaintiff principally relies, a crucial step in the Ninth Circuit's analysis was to "distill the unprotected idea from the protected expression." 562 F.2d at 1163. In making this determination in *Sid & Marty Krofft Television,* the court employed the "abstractions test" articulated by Judge Learned Hand in *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930), *cert. denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931):

> "Upon any work, ... a great number of patterns of increasing generality will fit equally well, ... but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his 'ideas,' to which, apart from their expression, his [copyright] is never extended."

562 F.2d at 1163. *See also Pendleton,* 605 F.Supp. at 484, (quoting the *Nichols* text). It follows, then, that the analysis must focus on whether the combination of these elements constitutes the expression of an idea or the idea itself.

In the instant case, this inquiry is further complicated because the subject matter of the two songs is so common in country music that it constitutes one of the genre's "stock" themes. *See Pendleton,* 605 F.Supp. at 477 ("It cannot be contested that a finite number of themes surface in country music songs"). Within a given genre, a certain amount of similarity of expression

follows inevitably from the choice of a "stock" theme. *Walker v. Time Life Films*, 784 F.2d 44, 50 (2d Cir.1986). This principle is certainly applicable to the two country music songs in dispute here. Having chosen the familiar theme of a broken-hearted lover seeking solace in country music, the choice of a barroom with a jukebox as the setting in which to unfold this idea simply cannot be attributed to any unique creativity on the part of the songwriter.

Furthermore, some similarity of expression will necessarily result from the choice of a frequently used setting or situation. Elements which are more or less basic to a given setting or situation are known as "scenes a faire," and are beyond the scope of copyright protection. *Walker*, 784 F.2d at 50. In *Walker*, for example, numerous elements of the plaintiff's novel, "Fort Apache," were also found in the defendants' motion picture, "Fort Apache: The Bronx." Affirming the trial court's grant of summary judgment for the defendants, the Second Circuit observed that "[e]lements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx." *Id.* Similarly here, the scope of protection afforded plaintiff by virtue of his copyright on "The Jukebox" is limited to those elements (or combination of elements) unique to plaintiff's treatment of the song's "stock" theme and his depiction of the stereotypical setting. *Id.*

The Sixth Circuit has held that in copyright infringement cases where the competing works both treat a concept that is not unique in itself, summary judgment for the defendant is appropriate if there are significant differences between the two works. *Mihalek*, 814 F.2d at 294–295; *Wickham*, 739 F.2d at 1096–1097. Although the Sixth Circuit did not specifically apply the "total concept and feel" test, the analysis employed in *Wickham* and *Mihalek* is not inconsistent with that approach. As the court stated in *Mihalek*, " '[a]s a matter of logic as well as law, the more numerous the differences between the two works the less likely it is that they will *create the same aesthetic impact* so that one will appear to have been appropriated from the other.' " 814 F.2d at 295 (quoting *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65–66 (2d Cir.1974)) (emphasis added). *See also Silva v. MacLaine*, 697 F.Supp. 1423, 1427 (E.D.Mich. 1988) (quoting the *Mihalek* text). *Accord Worlds of Wonder v. Vector Intercontinental, Inc.*, 653 F.Supp. 135, 140 (N.D. Ohio 1986) (finding substantial similarity between two "talking" toy bears under the "concept and feel" test because the distinguishing elements of defendants' work did not sufficiently differentiate the aesthetic appeal of defendants' work from that of plaintiff's). Because " '[a] general impression of similarity is not sufficient to make out a case of infringement,' " *Mihalek*, 814 F.2d at 295 (citation omitted), careful comparison of the two works is essential. *Id.* at 296. *See Wickham*, 739 F.2d at 1096–1097; *Silva v. MacLaine*, 697 F.Supp. at 1428. In *Wickham*, for example, the district court looked at the disputed architectural designs, all of which depicted a tower with either a spherical or saucer-like structure at the top. The Sixth Circuit determined that the specific characteristics of even the two most similar designs were sufficiently different that the visual impression created by the defendants' tower was substantially different from that created by the plaintiff's. 739 F.2d at 1096 (citing 555 F.Supp. 154). The district court, remarking that "[p]laintiff seems to be asserting that he has the exclusive right to design and erect a tower with a spherical building on top of it," noted that "[t]he use of towers in architectural designs is certainly not unique. Likewise the incorporation of a spherical structure into the design is no more than an 'idea'." *Id.* Similarly, the use of jukeboxes in country music songs about unrequited love is not sufficiently unique to warrant copyright protection.

In *Pendleton v. Acuff–Rose Publications, Inc.*, 605 F.Supp. 477 (M.D.Tenn. 1984), a case extremely similar to the present case, Judge Nixon granted summary judgment for defendants on the ground that, as a matter of law, the lyrics of the defendants' country music songs were not

substantially similar to the lyrics of the plaintiff's copyrighted songs. Discussing one of three pairs of competing songs, the court noted that both songs combined the elements of a male character smoking, drinking, and telling dirty jokes, and a female character whose angelic appearance belies her aggressive sensuality. 605 F.Supp. at 485. The court found that these ideas were used so frequently in the genre that "[e]ven an occasional country music listener" would likely encounter them in numerous songs. *Id.* Consequently, the court held that the elements were not subject to copyright protection. 605 F.Supp. at 486. The items common to the two songs in dispute in this case are likewise stereotypical of country music songs. Therefore, in the instant case as in *Pendleton*, " '[p]laintiff's right is to the arrangement of the words he has selected to express his ideas, not to the ideas or words themselves.' " *Id.*, (quoting *Jackson v. Washington Monthly Co.*, 481 F.Supp. 647, 649 (D.D.C.1979), *aff'd*, 675 F.2d 1340 (D.C. Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 172 (1982)).

■ The two songs use different words and lyrical structures to convey the elements they have in common. The central motif of the jukebox is established in the first line of each song. Yet, whereas plaintiff's song does not describe the jukebox at all, the defendants' descriptive phrase, "a vintage victrola nineteen-fifty-one," appears to be an original characterization of this idea. The same is true of the way in which the views of the central character's contemporaries are expressed in the respective songs. In plaintiff's song these peripheral characters are described merely as "friends," and three lines are devoted to what they say about the lonely man. In defendants' song, on the other hand, these characters are designated by the apparently unique term "neon neighbors," and they play an active role by replacing the worn out record every day. Another similarity is that both songs allude to legendary country music singers, but they allude to *different* performers. Moreover, the placement of those allusions in the structure of the chorus of the respective songs is sufficient-

ly different to preclude any inference of disguised piracy of plaintiff's creative expression.

Conclusion

There is no substantial similarity between defendants' song and copyrightable elements of plaintiff's song. Consequently, an essential element of the prima facie case for copyright infringement is lacking. Accordingly, an order granting summary judgment for the three moving defendants shall enter.

APPENDIX

"THE JUKEBOX" (Plaintiff's copyrighted song)

There's a jukebox that stands in the corner
At the hang out where I always go
There's an old country song on that jukebox
It's been there for ages I know
The bartender won't change the record
He knows I'll be mad if they do
They all know I sit here and play it
All night when I'm lonesome for you.
*Chorus*
So give me some dimes for these dollars
Enough that will last until dawn
And lock me inside with the jukebox
And ol' Ferlin will sing all night long
Since you've been gone.
My friends say I live in the Fifties
They don't think the future I'll find
They say time stands still in this corner
At my table it's still fifty-nine.
Oh but why should I look for tomorrow
When I lost you back in the past
Everyone knows when you lose things
You go back to where you've seen them last.
*Chorus*
So give me some dimes for these dollars
Enough that will last until dawn
And lock me inside with the jukebox

And ol' Ferlin will sing all night long
Since you've been gone.

"SET 'EM UP JOE" (Defendants' allegedly infringing composition)

They got a vintage victrola nineteen fifty-one
Full of my favorite records that I grew up on
They got ol' Hank and Lefty and 'n' there's B twenty-four.
Set 'em up Joe and play Walkin' the Floor
Set 'em up Joe and play Walkin' the Floor.

*Chorus*

I'm gonna spend the night like every night before
Playin' E.T. and I'll play him some more
I gotta have a shot of them ol' Troubad-ours
Yea set 'em up Joe and play Walkin' the Floor
Set 'em up Joe and play Walkin' the Floor.
All my neon neighbors they like what I play
'Cause they've heard it every night since you walked away
Every day they replace ol' B twenty-four
'Cause every night I run a needle through Walkin the Floor.

*Chorus*

I'm gonna spend the night like every night before
Playin' E.T. and I'll play him some more
I gotta have a shot of them ol' Troubad-ours
Set 'em up Joe and play Walkin' the Floor
Set 'em up Joe and play Walkin' the Floor.
I said set 'em up Joe and play Walkin' the Floor
Set 'em up Joe and play Walkin' the Floor.